REAL ESTATE–LAND TITLE & TRUST CO. v. DILDY.

No. 8154.

Court of Civil Appeals of Texas. Austin.

Feb. 19, 1936.

Rehearings Denied March 18, 1936.

George M. Field, of Dallas, and McGaugh & Darroch, of Brownwood, for appellant.

Woodruff & Holloway, of Brownwood, for appellee.

McCLENDON, Chief Justice.

Appellant, as assignee of Jagoe (Jagoe Construction Company, a foreign corporation), sued appellee upon certain paving certificates, issued by the city of Brownwood to Jagoe in consideration of street paving which Jagoe had done under contract with the city. Appellee had also executed mechanics' liens to secure the certificates. The trial court sustained a plea in abatement, predicated upon the forfeiture of Jagoe's permit to do business in Texas by reason of failure to pay its franchise tax, and dismissed the case.

The controlling facts, which are undisputed, follow:

Jagoe's permit to do business in Texas was duly forfeited on July 2, 1929, for failure to pay its franchise tax due March 15, 1929. There has been no subsequent revival or attempt at revival of this permit. The paving contract was executed November 6, 1930. February 17, 1931, Mrs. Dildy executed four mechanic's lien contracts in which she granted a lien on four lots owned by her and abutting on the street to be paved, and promised to pay the certificates when issued thereafter by the city. July 25, 1931, the work was completed and the certificates issued by the city to Jagoe. On the same day the latter assigned the certificates and liens securing them to a corporation, which in turn assigned them to appellant for value and without knowledge or notice (other than such constructive notice as the Secretary of State's records imputed) of Jagoe's want of authority to do business in Texas.

R.C.S. art. 7091, closes the doors of the courts of this state to foreign corporations whose permits to do business have been forfeited for nonpayment of franchise taxes.

The validity of contracts of such corporations, executed in pursuance of doing business in Texas after such forfeiture, is not affected thereby. The statute is a revenue measure only, and the only penalty it imposes is to deny to the offending corporation the right to prosecute or defend in its courts. Smythe Co. v. Ft. Worth, etc., Co., 105 Tex. 8, 142 S.W. 1157; State Bank v. Holland, 103 Tex. 266, 126 S.W. 564; New State Land Co. v. Wilson (Tex.Civ. App.) 150 S.W. 253.

While, under these holdings, an innocent purchaser (that is, one for value, without notice and before maturity) acquires the obligations of such corporation that are in the form of negotiable instruments, free from the inhibitions of the statute (State Bank v. Holland, supra), the assignee of a nonnegotiable instrument or obligation stands in no better position than the original holder thereof, and in like manner as such original holder is denied access to Texas courts to enforce such obligation. Stanard v. Cantwell (Tex.Civ. App.) 286 S.W. 760; Davis v. Texas Co. (Tex.Civ.App.) 232 S.W. 549, reversed on other grounds 113 Tex. 321, 254 S.W. 304, 255 S.W. 601; New State Land Co. v. Wilson, supra.

Paving certificates are not negotiable, and are subject, in the hands of an assignee, to all defenses and infirmities available to the obligor against the original obligee. Berwind v. Galveston & H. Inv. Co., 20 Tex.Civ.App. 426, 50 S.W. 413; Flinn v. Gillen, 320 Mo. 1047, 10 S.W.(2d) 923; 44 C.J. p. 685, § 3156; Id., p. 1255, § 4259.

While the foregoing principles are not seriously controverted, appellant urges the following contentions:

1. By executing the mechanic's lien instruments, valid on their face, appellee is estopped from asserting Jagoe's right to maintain suit thereon against one who acquired them in good faith, for value, and in due course of business, under the maxim, "Where one of two persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it." If this contention were sustained, it in effect would place all contracts and obligations in favor of such offending corporations, in the category of negotiable in-

struments. One contracting with a foreign corporation, inhibited from doing business in the state, does not thereby, by implication or otherwise, hold such corporation out as authorized to do business in the state. Nor are the penalties of the statute for the benefit or protection of those dealing with the corporation. The statute is a revenue measure, to enforce collection of the state's franchise taxes. Federal Crude Oil Co. v. Yount-Lee Oil Co., 122 Tex. 21, 52 S.W. (2d) 56. As already stated, the validity of the obligation between the original parties thereto is not thereby affected, and the corporation, as well as its assignee, is privileged to enforce it in other jurisdictions (Smythe Case, supra); and the disability to maintain a suit in the state courts is removed by payment of all taxes and penalties, and reinstatement of the permit. Federal Crude Oil Company Case, supra. The penalty imposed by the statute is the only means afforded to the state of collecting its revenues, and its coercive provisions cannot be frustrated or circumvented by mere dealing or contracting with the corporation under disability. The case before us presents no element of fraud or estoppel. The protection afforded innocent purchasers of negotiable instruments is based upon the law merchant (State Bank v. Holland, supra), and has no application to ordinary choses in action or nonnegotiable instruments, whether expressly or impliedly assignable.

2. Appellant's sixth proposition reads: "Should the contract for street improvements between Jagoe Construction Company and the City of Brownwood be held not to be the contract of said corporation, because of the forfeiture of its right to do business by the Secretary of State under the provisions of Art. 7091, then under the provisions of said article said contract was the individual contract of W. M. Jagoe and Hugh Keel, the officers of said corporation who signed the same, and the mechanic's lien contracts executed by property owners and certificates of special assessment issued by the City of Brownwood to Jagoe Construction Company were the individual property of the said W. M. Jagoe and Hugh Keel as partners, and the conveyance of said certificates and contracts on behalf of Jagoe Construction Company, by W. M. Jagoe and Hugh Keel, to appellant was actually the conveyance of the said W. M. Jagoe and Hugh Keel, as partners, and conveyed to appellant a good title to said certificates and contracts upon which appellant was entitled to maintain this suit."

There are circumstances under which stockholders may maintain or defend actions in the state courts to protect property rights of a foreign corporation whose permit to do business has been forfeited. Favorite Oil Co. v. Jef Chaison Townsite Co. (Tex.Civ.App.) 162 S.W. 423. No such case is presented here. The mere forfeiture of the franchise to do business does not forfeit the charter of, dissolve, or otherwise affect the legal status of, the corporation [Stephens County v. J. M. McCammon, Inc. (Tex.Com.App.) 40 S.W.(2d) 67], nor, as already seen, does it affect the validity of its acts. The transactions here involved were contracts and negotiations of the corporation, acting as such and in its corporate name. They were in no sense the acts of the directors or stockholders.

3. In its motion for new trial, appellant alleged (under oath) that the state highway commission had made contracts with Jagoe after forfeiture of its permit, for construction work amounting to more than $50,000, and paid Jagoe for such work with state funds; that appellant knew of such dealings and relied upon them in purchasing the certificates in question. It is urged that this operated as an estoppel on the part of the state to insist upon the forfeiture: (1) As a holding out of authority in Jagoe to do business in Texas; and (2) as a waiver of the penalty of the statutes in that the state had the power to deduct its taxes from the amounts due Jagoe under the construction contracts. This contention is untenable for two reasons:

(1) It comes too late, except as a ground for reopening the case in order to present newly discovered evidence. That it was not newly discovered conclusively appears from the allegation that it was relied upon in purchasing the certificates.

(2) The highway commission is not charged with the duty of collecting the state's franchise taxes. It is true that it might have refused to authorize issuance of warrants to Jagoe until the taxes were paid. Failure in this regard, however, could not mitigate the effect of Jagoe's dereliction, or the consequent statutory penalty. The state's right to its taxes, and the enforcement of penalties for their nonpayment, cannot be affected by acts of its officials whose duties have no relation to the payment or collection of such taxes.

The trial court's judgment not only dismissed the suit, but decreed that the dismissal was "with prejudice as against any

right or asserted right of the plaintiff * * * to maintain in this court, or in any other court of this state, any suit upon the alleged cause of action sued upon in this cause."

We have already seen that the validity of the cause of action is in no way affected by the statute. This is true whether the cause of action arose after the forfeiture or prior thereto. This necessarily follows from the fact that the statute is a revenue measure; and the penalty an enforcement expedient. It also follows that the lapse of time does not bar the right to have the penalty removed by payment of all taxes and penalties. This latter was the holding in Federal Crude Oil Company Case, supra, wherein it was said: "If corporations are permitted to pay their delinquent franchise taxes, with accumulated penalties, at any time and thereby obtain a revival of their right to do business, and to use the courts, the chief object and purpose of the statute to obtain the payment of such taxes will be more readily accomplished. To hold that the right of such a corporation to do business may not be revived by the payment of its delinquent franchise taxes and penalties after the time fixed in the statute would operate to destroy any incentive for a corporation delinquent in the payment of this tax to discharge its obligation to the state. If by payment of the amount due the state the corporation remains in its outlawed status, but few corporations would attempt to pay the same, and the state would lose a large amount of revenue. This case well illustrates the advantage of the policy of the state to permit payment of these taxes after the expiration of the time provided in the statute. This appellant paid into the state treasury more than $10,000 for the evident purpose of enabling it to prosecute this suit. In all probability no part of this delinquent tax would have been paid had the corporation known that its right to do business and privilege of suing in the courts could not be lawfully restored by such payment." 122 Tex. 21, 34, 52 S.W.(2d) 56, 61.

This reasoning manifestly applies with equal force to causes of action accruing after as well as to those accruing before the disability arose.

The proper order in the case was a simple judgment of dismissal upon sustaining the plea in abatement. Smythe and New State Land Company Cases, supra.

The trial court's judgment is reformed so as to delete therefrom the portion read-ing: "with prejudice as against any right of the plaintiff, the Real Estate-Land Title & Trust Company, to maintain in this court, or in any other court of this state, any suit upon the alleged cause of action sued upon in this cause;" and as so reformed, it is affirmed. Costs of appeal are assessed against appellee.

Reformed and affirmed.

## On Appellant's and Appellee's Motions for Rehearing.

Appellant directs our attention to the fact that we erroneously stated in our opinion that Jagoe was a foreign corporation, when in fact it was chartered under the laws of Texas. The opinion is ordered corrected in this regard. Article 7091 relates to "any corporation, either domestic or foreign," and visits the same consequences upon each, for failure to pay its franchise tax.

Attached to the motion is a certificate of the Secretary of State, showing that subsequently to the appeal in this case appellant paid all of Jagoe's franchise taxes, and its permit to do business in Texas was reinstated. This exact point was presented in Stephens County v. J. N. McCammon, Inc., 122 Tex. 148, 52 S.W.(2d) 53, 55, and disposed of as follows: "When an appellate court is called upon to revise the ruling of a trial court, it must do so upon the record before that court when such ruling was made. A party to a suit will not be permitted to try his case in the appellate court on a different statement of facts than that presented in the court below. Willis & Bro. v. Smith et al., 90 Tex. 635, 40 S.W. 401; Holland v. Jackson (Tex.Sup.) 37 S.W.(2d) 726."

Appellee insists that our holding that payment of the delinquent tax and reinstatement of the Jagoe permit would remove the bar to sue in the courts of this state is in conflict with the holding in Taber v. Interstate B. & L. Ass'n, 91 Tex. 92, 40 S.W. 954, 955; and that we therefore erred in modifying the trial court's judgment in this particular.

This point was not involved in the Taber Case; and, besides, that case was predicated upon R.S. of 1895, art. 746 (now article 1536), which denies to a foreign corporation doing business in Texas, which has not filed its articles of incorporation with the Secretary of State, the right to sue in the state courts. This article is under title 32 of the statutes, which deals generally with private corporations, chapter

'19 (article 1529 et seq.) whereof (in which the article appears) prescribes the things essential to be done as prerequisite to doing business in Texas by foreign corporations. Article 7091 is under the general title of the statutes dealing with taxation. It relates to corporations (foreign and domestic) that have theretofore complied with the statutes prescribing prerequisites to obtaining a permit to do business, but have thereafter lost such permit by failure to pay the franchise tax. The article is a revenue enforcement measure pure and simple. Subsequent payment of the tax and reinstatement of the permit has the effect of removing the disability. This was the exact holding in the Federal Crude Oil Company Case. It is true, in that case the permit was in good standing when the cause of action arose. But the principle involved is the same. The statute does not affect the validity of the cause of action, whether it arose prior or subsequently to the forfeiture. That being true, and the statute being a revenue enforcement measure only, it necessarily follows that payment of the tax, and reinstatement of the permit, removes the penalty.

Whether a similar holding would apply to a foreign corporation that was doing business in Texas without ever having obtained a permit is not here involved. Nor was that question involved in the Taber Case. The case arose upon certified question; and the sole issue was one of burden of proof, namely, whether it was necessary for a foreign corporation doing business in Texas to prove its allegation that it had obtained a permit. The court answered "that it was necessary for the corporation (plaintiff below) to prove that it had a permit to do business in Texas at the time that the contract sued upon was made." The answer followed the form of the question certified, and applied to the fact situation presented in the certificate. If, however, it be conceded that a foreign corporation that has never complied with article 1529 et seq., at the time the cause of action arose, could not, by subsequent compliance and securing a permit, sue in the Texas courts upon such cause of action, it does not necessarily follow that a) like construction should be given to article 7091, since, as stated, articles 1536 and 7091 appear under different titles in the statutes, dealing with wholly different objectives.

Appellee further urges that our holding ignores the following provision in article 7091: "In any suit against such corporation on a cause of action arising before such forfeiture, no affirmative relief shall be granted to such corporation, unless its right to do business in this State shall be revived as provided in this chapter." It is argued that the express authority to sue upon revival of the permit, granted by this provision, in cases where the cause of action arose prior to the forfeiture, excludes, by implication, revival of the right to sue upon causes of action arising at a time when the forfeiture was in effect. This, under the principle of inclusio unius est exclusio alterius. We do not give this construction to the clause. The distinction which it draws in favor of causes of action arising prior to the forfeiture relates only to *defensive,* as contrasted with affirmative, relief. In other words, the right to defend in the state courts is not taken away as to causes of action arising prior to the forfeiture; but only the right to affirmative relief as to such causes of actions. It is to be noted that such right to affirmative relief is expressly denied unless the "right to·do business in this state shall be revived *as provided in this chapter.*" The only *provision* in the chapter for such revival is to the effect that this may be done at "any time within six months after such forfeiture." If the doctrine of inclusio unius were applied to this provision, it would exclude the right of revival after the six months' period. The Supreme Court refused to apply this doctrine to this clause in the Federal Crude Oil Company Case; and the same reasoning with equal force requires its nonapplication in the instant controversy.

Appellee has cited a number of cases in further support of her contention. We do not think it necessary to review these cases. It is sufficient in this connection to paraphrase a sentence from the Federal Crude Oil Company Case: A careful examination of these cases reveals the fact that the question of revival of the right of the corporation to use the courts as to causes of action accruing before the forfeiture was not involved, nor was it necessary to a decision of the case.

Both motions are overruled.

Overruled.